**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49091**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: June 27, 2023** |
| **Plaintiff-Respondent,** | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JOSEPH MAX PEARSON, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| **Defendant-Appellant.** | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Lincoln County. Hon. Ned C. Williamson, District Judge.

Judgment of conviction for felony injury to a child, two counts of sexual battery of a minor child sixteen or seventeen years of age, and aggravated assault with an enhancement for the use of a deadly weapon, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jacob L. Westerfield, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Joseph Max Pearson appeals from his judgment of conviction for felony injury to a child, Idaho Code § 18-1501(1); two counts of sexual battery of a minor child sixteen to seventeen years of age, I.C. § 18-1508A(1)(c); and aggravated assault, I.C. § 18-905, with an enhancement for the use of a deadly weapon, I.C. § 19-2520. Pearson alleges the district court erred when it denied his motion to dismiss the case based on a claim that his United States and Idaho constitutional speedy trial rights had been violated. Because Pearson failed to carry his burden to show his constitutional speedy trial rights were violated, the district court did not err and the judgment of conviction is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Pearson was arrested on December 7, 2017, and the next day, Pearson was charged with sexual battery of a minor child; aggravated assault, great bodily harm; aggravated assault; and false imprisonment. After two days in custody, Pearson was released on bond (first case). On April 25, 2018, the State moved to dismiss the first case without prejudice so it could amend the charges. The motion was granted.

On November 13, 2018, the State refiled charges against Pearson (second case). In the second case, Pearson was charged with sexual battery of a minor child, aggravated battery, and aggravated assault, which was enhanced for the use of a deadly weapon. Pearson was served a summons. Approximately six weeks before the trial date, the assigned prosecutor passed away. An interim prosecutor was appointed, and at a hearing on July 1, 2019, the interim prosecutor stated that he wanted to amend the complaint to include a felony count of injury to a child. Although Pearson was initially reluctant to waive his speedy trial rights, he ultimately waived his speedy trial rights. The district court confirmed that Pearson intended to waive his speedy trial rights, that Pearson had spoken to his counsel about the decision, and that his waiver was voluntary. The district court accepted Pearson's waiver of his speedy trial rights. A new prosecutor was appointed, and because the complaint could not be amended, the State moved to dismiss the case, which was granted on October 2, 2019.

On November 12, 2019,[1] the State refiled charges against Pearson, this time charging him with felony injury to a child, I.C. § 18-1501(1); two counts of sexual battery of a minor sixteen or seventeen years of age, I.C. 18-1508A; aggravated assault, I.C. §§ 18-905, -908(a), -906, with an enhancement for use of a deadly weapon, I.C. § 19-2520; and assault with intent to commit a serious felony, I.C. § 18-909 (third case). On January 30, 2020, Pearson filed a stipulation to continue the preliminary hearing from January 31 to February 21, 2020. The preliminary hearing was continued and Pearson was bound over for trial.

Beginning in March 2020, the coronavirus (COVID-19) pandemic affected the timing of jury trials in Idaho. On March 13, the Idaho Supreme Court entered its first emergency order in response to the pandemic. That March 13 order stated "[r]easonable attempts should be made to

---

[1]    The parties indicate the third case was filed November 13, 2019. The complaint was filed November 12, 2019, and the affidavit in support was filed November 13, 2019.

reschedule all criminal trials, subject to a defendant's right to a speedy trial." In re: Idaho Supreme Court Response to COVID-19 Emergency dated March 13, 2020, at paragraph three. Shortly thereafter, on March 23, the Court entered an amended emergency order--effective March 25--prohibiting all jury trials through April 30 and stating the order "shall be deemed good cause to deny a motion to dismiss a criminal case based upon the time requirements" in I.C. § 19-3501. Amended Order dated March 23, 2020, at paragraph three. Subsequently, the Court entered several additional orders extending this provision and prohibiting jury trials. *See, e.g.*, Order dated March 23, 2020, at paragraph four (requiring rescheduling criminal jury trials scheduled on March 26 through April 30, 2020); In re: Extension of Emergency Reduction in Court Services and Limitation of Access to Court Facilities dated April 14, 2020 (prohibiting jury trials before June 1, 2020); and Order dated April 22, 2020 (prohibiting criminal jury trials before August 3, 2020).

On June 19, 2020, Pearson filed a motion to dismiss the case based upon a violation of his statutory speedy trial rights under I.C. § 19-3501 and the United States and Idaho Constitutions. Pearson argued an assessment of the *Barker v. Wingo*, 407 U.S. 514 (1972) factors (length of delay, reasons for delay, his assertion of the right, and ensuing prejudice) demonstrated that his constitutional rights to a speedy trial were violated. Pearson alleged that more than two years had passed since he was originally charged and the length of the delay between the initial charges and the trial date resulted in a constitutional speedy trial violation. The State opposed Pearson's motion. The State noted that the first case was dismissed based on a charging mistake by the prosecutor but argued no violation of Pearson's federal or state speedy trial rights occurred. The State also argued in the alternative that: (1) the time of the second case should be completely excluded from the calculation regarding the length of the delay because Pearson waived his right to a speedy trial in that case; (2) any time for the delay attributable to Pearson should also be excluded from the calculation; (3) Pearson did not assert his rights to a speedy trial until June 2020; and (4) the remaining time did not rise to the level of a speedy trial violation.

Hearings were held on Pearson's motion to dismiss. During the hearings, Pearson stated that he was not proceeding under the Idaho statutory authority but was instead focusing on the alleged violations of his federal and state constitutional speedy trial rights. Pearson argued an assessment of the *Barker* factors demonstrated that his constitutional rights to a speedy trial were violated. Specifically, Pearson argued that the aggregate of the days from the time of his

December 7, 2017, arrest to his scheduled August 26, 2020, trial should count when assessing the length of delay, including the time between the dismissal and refiling of charges. Pearson alternatively argued that even if the number of days between the filing of each charging document were excluded from the aggregate, his speedy trial rights were still violated. While Pearson argued the length of the proceedings had "impacted his business, focus, energy, mood, stress level, [and] anxiety," he also conceded his defense had not been impaired by the delay.

The State argued: (1) the time preceding Pearson's speedy trial waiver should be excluded from the calculation of the *Barker* factors; (2) Pearson's waiver continued until he reasserted his right to a speedy trial; (3) it would be unfair to allow a defendant to waive speedy trial rights and then later assert the time prior to the speedy trial waiver should be counted and attributed to the State; and (4) the most appropriate analysis was to conclude that any time before the speedy trial waiver was not included in analyzing the *Barker* factors and the time calculation for a speedy trial analysis did not begin until Pearson reasserted his speedy trial rights. The State further argued that even if the cases were aggregated: (1) the time during which there was no active case against Pearson did not count in the assessment of the length of the delay; (2) Pearson waived consideration of all delays prior to July 1, 2019, by waiving his speedy trial rights; (3) Pearson caused many of the delays in the proceedings and, thus, those delays were attributable to Pearson; and (4) Pearson had not shown any prejudice beyond two days of incarceration and generalized anxiety. Ultimately, the State argued Pearson's speedy trial rights were not violated.

The district court applied the *Barker* factors to determine whether Pearson's constitutional rights to a speedy trial were violated. First, the district court determined that the time between cases when no charges were pending should be excluded from the *Barker* analysis.[2] Second, the district court looked at only the length of the third case and found the length of the third case, in isolation, did not violate Pearson's speedy trial rights. The district court then considered whether the time spanning all three cases resulted in a violation of Pearson's speedy trial rights. The district court found that when looking at all three cases in the aggregate, although the length of the delay in the proceedings was enough to trigger an analysis of whether Pearson's constitutional speedy trial rights had been violated, the delay did not constitute a violation. First, the district court

---

[2]     The district court relied on *United States v. MacDonald*, 456 U.S. 1 (1982); *State v. Brackett*, 160 Idaho 619, 377 P.3d 1082 (Ct. App. 2016); *State v. Crockett*, 151 Idaho 674, 263 P.3d 139 (Ct. App. 2011); and *State v. Fairchild*, 108 Idaho 225, 697 P.2d 1239 (Ct. App. 1985).

4

concluded the first case proceeded in a "usual fashion." Second, the court reasoned that because Pearson waived his speedy trial rights in the second case, "with that waiver, I just don't think that case on its own would trigger analysis." Finally, the court found that while the third case had some delays, the delays were attributable to Pearson and emergency statewide orders issued by the Idaho Supreme Court delaying jury trials during the COVID-19 pandemic. The district court also found Pearson had not alleged prejudice beyond prolonged, generalized anxiety. Thus, whether considering just the third case in isolation or all three cases together, Pearson had not established a violation of his speedy trial rights.

The matter proceeded to trial, and the jury found Pearson guilty of the charges.[3] The district court sentenced Pearson to a total unified sentence of fifteen years, with five years determinate. Pearson timely appeals.

## II.

## STANDARD OF REVIEW

Whether a defendant's right to speedy trial was infringed is a mixed question of law and fact. *State v. Clark*, 135 Idaho 255, 257, 16 P.3d 931, 933 (2000). We defer to the trial court's findings of fact if supported by substantial and competent evidence. *Id.* We exercise free review of the trial court's conclusions of law. *Id.*

## III.

## ANALYSIS

Pearson alleges the district court erred by finding the State did not violate his speedy trial rights under the United States and Idaho Constitutions.[4] Pearson alleges all the time that he was actively prosecuted across the three cases should be considered in assessing the length of the delay and a weighing of the *Barker* factors demonstrates a violation of his speedy trial rights. In response, the State argues that when Pearson waived his speedy trial rights on July 1, 2019, without any language limiting its application, Pearson waived his right to a speedy trial both for the time

---

[3]     Pearson pleaded guilty to a misdemeanor domestic violence charge, which had previously been severed from the proceedings. The misdemeanor charge is not at issue in this appeal.

[4]     Pearson does not argue the analysis of an alleged violation of a defendant's right to a speedy trial is different under the Idaho Constitution than the United States Constitution. Thus, we will apply the federal analysis for this case but recognize that, for purposes of the state constitutional analysis, the period of delay is measured from the date formal charges are filed or the defendant is arrested, whichever occurs first. *See State v. Davis*, 141 Idaho 828, 836, 118 P.3d 160, 168 (Ct. App. 2005).

preceding the waiver and for any time after the waiver and, therefore, there is no speedy trial violation. Alternatively, the State contends that even if Pearson's waiver of his speedy trial rights did not apply to the third case, the district court did not err in finding there was no speedy trial violation when considering the time and circumstances across all three cases.

Both the Sixth Amendment to the United States Constitution and Article 1, § 13, of the Idaho Constitution guarantee to criminal defendants the right to a speedy trial. *State v. Prano*, 170 Idaho 337, 340, 510 P.3d 690, 693 (Ct. App. 2021). "The speedy trial guarantees are designed to minimize the possibility of lengthy incarceration prior to trial; to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail; and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *State v. Lopez*, 144 Idaho 349, 352, 160 P.3d 1284, 1287 (Ct. App. 2007); *see also United States v. Loud Hawk*, 474 U.S. 302, 311 (1986); *United States v. MacDonald*, 456 U.S. 1, 8 (1982).

In circumstances where a defendant faces dismissed and refiled charges stemming from the same underlying conduct, the total time a defendant faces active criminal charges is properly considered in a speedy trial analysis. *See State v. Davis*, 141 Idaho 828, 837, 118 P.3d 160, 169 (Ct. App. 2005) (considering eighteen months as relevant time of delay where initial case was pending for ten months before State dismissed and refiled charges in subsequent case that lasted eight months). However, because the right to a speedy trial has no application beyond the confines of a formal criminal prosecution, the time period between the dismissal of criminal charges and the refiling of those charges is not considered. *Id.* at 836, 118 P.3d at 168; *see also Doggett v. United States*, 505 U.S. 647, 655 (1992).

## A. Pearson Waived His Federal and State Speedy Trial Rights in the Second Case

On appeal, Pearson does not challenge the district court's factual findings. Further, the parties agree there was no violation of Pearson's speedy trial rights when considering the proceedings stemming from the first or third cases individually. The parties similarly do not dispute that a trial court may consider the time elapsed over multiple cases when assessing whether a defendant's speedy trial rights were violated, but the court may not consider the time during which the defendant was not actively prosecuted, i.e., the time between when a case is dismissed

6

and when it was refiled.[5]  Instead, the parties dispute the effect and reach of Pearson's July 1, 2019, waiver.

Pearson argues the waiver in the second case does not apply to the first case or the third case.  Pearson also argues that despite waiving his speedy trial rights in the second case on July 1, 2019, we should nonetheless include the time period of the second case when aggregating the time he was actively prosecuted across all three cases for purposes of determining whether his speedy trial rights were violated.  The State argues that because Pearson's speedy trial waiver was not limited in any way, that waiver also applies to the first and third cases.  Alternatively, the State contends that even if the duration of the cases is aggregated, there is no speedy trial violation.

While defendants have constitutional speedy trial rights, these constitutional rights can be waived.  *See Lopez*, 144 Idaho at 352, 160 P.3d at 1287.  "A waiver is a voluntary relinquishment or abandonment of a known right or privilege, and courts should indulge every reasonable presumption against waiver."  *Id.*  Accordingly, while a court may not presume waiver from a silent record, a defendant may waive his speedy trial rights through expressed consent or other affirmative conduct.  *State v. Stuart*, 113 Idaho 494, 497, 745 P.2d 1115, 1118 (Ct. App. 1987).  The district court found that Pearson waived his speedy trial rights in the second case.  Pearson did not argue at that hearing that he did not waive his constitutional, as opposed to his statutory, rights to a speedy trial.  Issues not raised below may not be considered for the first time on appeal.  *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992).  In his opening brief, Pearson does not challenge the district court's factual finding that he waived his speedy trial rights or argue that his waiver applied only to his statutory speedy trial rights; instead, he raised them in his reply brief.  This Court does not consider arguments raised for the first time in a reply brief.  *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005).  Thus, for purposes of this appeal, we will analyze Pearson's waiver as a waiver of his federal and state constitutional rights to a speedy trial.

B.     **Pearson's Speedy Trial Rights Were Not Violated**

In *Barker*, the United States Supreme Court adopted a four-part balancing test to determine whether a defendant's Sixth Amendment speedy trial right has been infringed.  The four factors to be balanced are:  (1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right to a speedy trial; and (4) the prejudice to the accused.  *Barker*, 407 U.S. at 530.  We utilize

---

[5]     Although Pearson argued below that the time in between active indictments should be considered, he does not pursue this argument on appeal.

7

the same test for speedy trial claims under the Idaho Constitution. *State v. Young*, 136 Idaho 113, 117, 29 P.3d 949, 953 (2001); *Lopez*, 144 Idaho at 352, 160 P.3d at 1287.

Because the parties agree that none of Pearson's three cases, individually, constituted a speedy trial violation, we will address only whether the aggregation of time across all three cases resulted in a violation of Pearson's speedy trial rights. When analyzing the effect of Pearson's speedy trial waiver, this Court need not decide whether Pearson's July 1, 2019, waiver had a retroactive or prospective application because, even assuming without deciding that Pearson only waived his speedy trial rights in the second case, an analysis of the *Barker* factors demonstrates that Pearson's speedy trial rights were not violated.

### 1.    Length of delay

The first factor, the length of the delay, is initially a triggering mechanism. *Young*, 136 Idaho at 117, 29 P.3d at 953. Until there is some delay which is presumptively prejudicial, it is unnecessary to inquire into the other three factors. *Id.* Under the Sixth Amendment to the United States Constitution, the period of delay is measured from the date there is "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." *United States v. Marion*, 404 U.S. 307, 320 (1971); *Young*, 136 Idaho at 117, 29 P.3d at 953. The Idaho Supreme Court has held that for cases prosecuted in state courts, under the Idaho Constitution, the period of delay is measured from the date formal charges are filed or the defendant is arrested, whichever occurs first. *Lopez*, 144 Idaho at 352-53, 160 P.3d at 128-88.

*Barker*'s four-part speedy trial test creates no bright line boundaries. Rather, the United States Supreme Court noted that because of the imprecision of the right to a speedy trial, the length of delay that will provoke an inquiry into whether those rights have been violated is necessarily dependent upon the peculiar circumstances of the case. *Barker*, 407 U.S. at 530-31. The nature of the case is also important in determining the period of delay that can be tolerated, for the period that is reasonable for prosecution of an "ordinary street crime" is considerably less than for a complex criminal charge. *Id*. at 531; *Lopez*, 144 Idaho at 353, 160 P.3d at 1288. This Court has held that delays of one year in a lewd conduct case, *State v. Folk*, 151 Idaho 327, 331, 333, 256 P.3d 735, 739, 741 (2011), and thirteen months in a complex drug trafficking case were sufficient to trigger analysis. *State v. Rodriquez-Perez*, 129 Idaho 29, 34, 921 P.2d 206, 211 (Ct. App. 1996).

The district court found Pearson was arrested in the first case on December 7, 2017, and the case was dismissed on April 25, 2018. In the second case, the district court found Pearson was

served a summons on November 13, 2018, and the case was dismissed on October 2, 2019. The district court found Pearson was charged in the third case on November 12, 2019, and the trial was scheduled to begin on August 26, 2020. The district court found that from the date that Pearson was arrested in the first case until the trial setting in the third case was 992 days and the time in between the filings was 243 days; the district court excluded the 243 days from its *Barker* analysis.

The time period that each of the three cases was pending is[6]:

| | |
|---|---|
| Case Number 1: | 140 days |
| Case Number 2: | 324 days |
| Case Number 3: | 288 days |
| Total: | 752 days |

To determine whether a *Barker* analysis is triggered, we must look at the length of delay in setting Pearson's trial date, as well as the nature of charges. Pearson was facing multiple felony charges, which included allegations of abuse, sexual battery, and aggravated assault with an electric saw. These facts are more complex than an ordinary street crime, but are less than a complex criminal charge. The district court concluded the delay across all three cases was sufficient to trigger a *Barker* analysis. On appeal, the parties agree that the aggregate number of days across all three cases is sufficient to trigger inquiry into whether Pearson's constitutional speedy trial rights were violated.

"Once the balancing test is triggered, the length of the delay also becomes a factor in the balancing itself." *State v. Brackett*, 160 Idaho 619, 626, 377 P.3d 1082, 1089 (Ct. App. 2016). The district court found that under the circumstances here, it would not ascribe heavy weight to the delay either individually or in the aggregate; the first case proceeded in a usual scheduling fashion; Pearson waived his speedy trial rights in his second case; and while some delays occurred in the third case, the case was nonetheless progressing in the usual manner.

There are two ways to address Pearson's speedy trial waiver. First, the duration of the second case could be excluded from the aggregate calculation. If the second case is excluded as a result of Pearson's waiver, the remaining number of days is the duration of the first case (140 days) plus the duration of the third case (289 days) for a total of 429 days. Even if the 324 days of the second case is included in the aggregate calculation of delay, it would not change the analysis,

---

[6]     The district court did not make specific factual findings regarding the duration of each case. These numbers are taken from Pearson's calculations and the State does not challenge these numbers on appeal. Thus, for ease of analysis, we will use the above numbers.

because, as explained below, the number of days the second case was pending can be attributed to Pearson as a result of his waiver. Thus, while the aggregate would increase from 427 days to 753 days, the days attributable to Pearson would similarly increase from 108 days to 432 days. Thus, while the delay was enough to trigger a speedy trial analysis, we do not find this factor weighs heavily in Pearson's favor in balancing the *Barker* factors.

### 2.      Reasons for delay

Next, we turn to the second *Barker* factor, the reasons for the delay. Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. *Doggett*, 505 U.S. at 656; *Davis*, 141 Idaho at 837, 118 P.3d at 169. In evaluating this factor, we assign different weights to different reasons for delays. *Loud Hawk*, 474 U.S. at 315; *Davis*, 141 Idaho at 837, 118 P.3d at 169.

When a defendant waives his speedy trial rights, the ensuing delay may be weighed against the defendant. In *Lopez*, this Court held "a defense attorney's unauthorized representation that his client will waive speedy trial rights is applied as a factor, in appropriate circumstances, to be weighed against the defendant in determining the cause of the delay." *Lopez*, 144 Idaho at 352, 160 P.3d at 1287. The Court went on to hold that counsel's unauthorized waiver of Lopez's speedy trial rights caused the case to be assigned a "low priority" for trial settings and Lopez acquiesced in the low-priority setting by not asserting his rights to a speedy trial. *Id*. at 354, 160 P.3d at 1289. Similarly, a defendant cannot complain about a lapse of time attributable to continuances he sought and received. *United States v. Garcia*, 59 F.4th 1059, 1069 (10th Cir. 2023).

Here, the district court concluded the waiver in the second case did not apply retroactively to the first case or prospectively to the third case. The district court also found that the delays during the proceedings were attributable to a mixture of Pearson, the State, and neutral reasons. As it considered the time the three cases were pending, the court stated there was not much delay attributable to the State, but much of the delay was attributable to Pearson:

> The reason for the delays, when you combine it, I don't see anything in the first case where the State is responsible for that time frame of a delay that's significant. In the--I'm trying to recall--it doesn't really make any difference for this analysis, there was a request by the State for a continuance based upon a desire to attend a wedding. That, clearly, is at the feet of the State. It's either in the second or third case. Frankly, I can't remember at the moment. But that's about the only reason for a delay that's attributable to the State when you look at each individual case, significant delay.

10

I just see all three cases progressing along in a normal fashion. There was some delay attributable to Mr. Pearson in each of the cases. That does add up. It's somewhat of a significant time when you look at all three cases. It's 28 days in the first case; 80 days in the third case. In the second case it's not clear to me exactly, but it's a minimum of 68 days, I believe. So it's significant.

Neither party challenges the district court's findings above. The district court determined the length of delay attributable to Pearson in each case as follows:

Case Number 1:     28 days attributable to Pearson
Case Number 2:     68 days attributable to Pearson
Case Number 3:     80 days attributable to Pearson

The district court then attributed the majority of the delay in the third case to the Idaho Supreme Court's COVID-19 pandemic emergency orders dated March 24, 2020, and April 22, 2020, that prohibited any trials before August 3, 2020, and, therefore, the delay was not attributable to either party. The number of days between the orders and the August 26, 2020, trial resulted in delays of approximately 124 days (using the March 24th date).

As held in *Lopez*, an unauthorized waiver of a defendant's speedy trial right may be weighed against the defendant in determining the cause of the delay. *Lopez*, 144 Idaho at 352, 160 P.3d at 1287. Thus, Pearson's explicit waiver of his speedy trial rights in the second case may be weighed against him as a reason for the delay. To be clear, we do not intend to convey that the waiver applied only in the second case because as stated above, we need not decide either the retroactive or prospective application of the waiver to resolve the issue herein. Accordingly, if the duration of the second case is included in the aggregate time for all three cases, then the 324 days the second case was pending is attributed to Pearson for the purposes of the second *Barker* factor. In other words, the legal effect of Pearson's speedy trial waiver is that, to the extent the second case caused any delay in the aggregate time calculation, that delay is weighed against Pearson. Pearson cannot be found to complain about the length of time the second case was proceeding when he expressly waived any challenge to that time. To the extent the district court included the second case in the aggregate time calculation, the district court erred in attributing only 68 days to Pearson instead of 324 days, which is the time the case was pending because, pursuant to *Lopez*, those 324 days may be, and in this case are, weighed against Pearson.

The total delay across the three cases was 752 days with 432 days (28 plus 324 plus 80) attributable to Pearson; approximately 124 days attributable to the Idaho Supreme Court's emergency orders relating to the COVID-19 pandemic; and the remaining 196 days (752 minus

432 minus 124) attributable to the State. Accordingly, because a significant portion of the delay in the case was attributable to both Pearson and the COVID-19 emergency orders and not to the State, the reasons for the delay do not weigh in Pearson's favor under the *Barker* balancing process.

### 3. Assertion of right

Next, we turn to Pearson's assertion of his speedy trial rights. The defendant's assertion of his right to a speedy trial is entitled to strong evidentiary weight in determining whether he is being deprived of the right. *Barker*, 407 U.S. at 531-32; *Davis*, 141 Idaho at 839, 118 P.3d at 171. The timing of a defendant's assertion of the right tends to disclose whether he actually desired a speedy trial. *Lopez*, 144 Idaho 349, 353, 160 P.3d 1284, 1288. As such, a defendant's failure to assert the right will make it difficult for him to prove that he was denied a speedy trial. *Barker*, 407 U.S. at 532; *Davis*, 141 Idaho at 839, 118 P.3d at 171.

Here, the district court found that Pearson is entitled to a speedy trial without a requirement that he demand the right, but it also found it was "significant" that Pearson waived his right to a speedy trial in the second proceeding. Nonetheless, Pearson's first explicit assertion of his right to a speedy trial occurred when he filed his motion to dismiss on June 19, 2020, approximately two months before his third case was set for trial.[7] His first assertion was more than two and a half years after his December 7, 2017, initial arrest, almost one year after his speedy trial waiver, and approximately seven months after the third case had been filed. While not so close to trial that it weighed heavily against finding that Pearson's rights were violated, Pearson's assertion of his speedy trial rights at a relatively late point in the proceedings does not weigh in his favor under the *Barker* balancing process. *See Rodriquez-Perez*, 129 Idaho at 37, 921 P.2d at 214.

---

[7]    Both below and on appeal, Pearson argues that he also implicitly asserted his right to a speedy trial when he opposed a continuance motion by the State during the course of the second case. Pearson alleges that he objected to the continuance because "the underlying facts have been litigated since December of 2017, resulting in a large expenditure of time and money for the Defendant, including preparation for a trial that was dismissed before related charges out of the same facts were re-filed." However, the district court did not find that this constituted an assertion of Pearson's speedy trial rights and more importantly, after that alleged assertion, Pearson waived his speedy trial rights. Also, neither the minutes nor the transcript from this proceeding are in the record on appeal. It is the responsibility of the appellant to provide a sufficient record to substantiate his claims on appeal. *State v. Murinko*, 108 Idaho 872, 873, 702 P.2d 910, 911 (Ct. App. 1985). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *State v. Beason*, 119 Idaho 103, 105, 803 P.2d 1009, 1011 (Ct. App. 1991).

### 4. Prejudice

Finally, the fourth factor in the *Barker* analysis is prejudice to the accused caused by the delay. The nature and extent of prejudice arising out of a delay in bringing a criminal action to trial is the most important of the *Barker* factors. *State v. McNew*, 131 Idaho 268, 273, 954 P.2d 686, 691 (Ct. App 1998). Prejudice is to be assessed in light of the interests of defendants that the right to a speedy trial is designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *Young*, 136 Idaho at 118, 29 P.3d at 954. Whether a delay hinders the ability of a defendant to adequately prepare his case is the most significant form of prejudice because it skews the fairness of the entire criminal justice system. *Barker*, 407 U.S. at 532; *see also Lopez*, 144 Idaho at 354-55, 160 P.3d at 1289-90; *State v. Hernandez*, 133 Idaho 576, 583, 990 P.2d 742, 749 (Ct. App. 1999).

Here, the district court found Pearson was not prejudiced by the delays in the proceedings. The district court recognized that Pearson faced anxiety and angst as a result of the charges, but found this was not enough to rise to the level of significant prejudice; Pearson faced only two days of pretrial incarceration throughout the proceedings and there was no showing that his defense was or would be hindered or impaired by the delay. In the district court, Pearson acknowledged that his defense was not hindered by any of the delays:

Court: When you look at prejudice to your client, is there any prejudice that you are alleging that deals with the possibility that his defense will be impaired?
Defense: Judge, we don't have those facts.
Court: Right.
Defense: We don't have those facts. I'm not aware of a witness that's gone missing that we need. Maybe one of the deputies or one of the ambulance personnel that was originally at the scene early that morning are not around, but there's no one that I have felt on Mr. Pearson's behalf that was critical in that regard. Everyone that's more critical to my understanding is available.

Thus, the only prejudice which Pearson alleged he suffered as a result of the delay was anxiety from facing the charges over a prolonged period of time, stating in general terms that the proceedings "impacted his business, focus, energy, mood, stress level, anxiety, etcetera." Although we acknowledge one of the goals of the right to a speedy trial is to minimize the anxiety and concern of the accused, we have repeatedly held that anxiety by itself is generally insufficient to support a claim of a speedy trial violation. *Young*, 136 Idaho at 118, 29 P.3d at 954; *see also*

13

*State v. Risdon*, 154 Idaho 244, 252, 296 P.3d 1091, 1099 (Ct. App. 2012); *State v. Crockett*, 151 Idaho 674, 678, 263 P.3d 139, 143 (Ct. App. 2011). Pearson only makes a general claim of anxiety in support of his claim that he was prejudiced by the delay and has not established that he was prejudiced. Therefore, this factor does not weigh in favor of finding a speedy trial violation.

### 5. Balancing

We now must weigh the four *Barker* factors, together with such other circumstances as may be relevant, to determine whether there has been a violation of Pearson's constitutional rights to a speedy trial. *Rodriquez-Perez*, 129 Idaho at 37, 921 P.2d at 214. Although the length of the delay gives rise to some presumed prejudice, that prejudice is of limited significance when weighed with the other factors in this case. The majority of the delay over the period at issue was attributable to Pearson and the Idaho Supreme Court's emergency COVID-19 orders. The length of the remaining delay was not extraordinary given the circumstances of the case, and the district court found there was no bad faith conduct on the part of the State. Pearson failed to assert his right to a speedy trial during the first two years of the proceedings and at one point explicitly waived his speedy trial rights. Pearson may have faced anxiety and concern while facing charges, but his time in custody was limited to two days and he has not shown that his defense was been impaired as a result of the delay. Thus, considering the four *Barker* factors, Pearson failed to carry his burden to show his constitutional speedy trial rights were violated. Accordingly, the district court did not err in denying Pearson's motion to dismiss.

### IV.
### CONCLUSION

Pearson failed to establish that his constitutional speedy trial rights were violated by the delays in his proceedings. The district court did not err in denying Pearson's motion to dismiss and the judgment of conviction is affirmed.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.