IN THE COURT OF APPEALS OF THE STATE OF IDAHO

**Docket No. 50179**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: March 8, 2024** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| WENDY KATHLEEN CAUDILL, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Derrick J. O'Neill, District Judge.

Judgment of conviction, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Wendy Kathleen Caudill appeals from her judgment of conviction for felony possession of a controlled substance, Idaho Code § 37-2732(c). Caudill challenges the district court's denial of her motion to suppress and the denial of her motion to dismiss based on an alleged violation of her speedy trial rights. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Caudill was stopped for a traffic violation on November 27, 2019. During the traffic stop, a police K-9 alerted on her vehicle. Although not resolved by the district court, Caudill asserted that the K-9 placed its paws on the driver-side door and sniffed within the inside of the vehicle. Based upon the results of the search, the State charged Caudill with possession of

1

methamphetamine, possession of marijuana, possession of drug paraphernalia, and providing false information to law enforcement. Caudill's first trial date was set for May 5, 2020.

In March 2020, the coronavirus (COVID-19) pandemic affected the timing of jury trials in Idaho. On March 13, 2020, the Idaho Supreme Court entered its first emergency order in response to the pandemic. The March 13 order stated "[r]easonable attempts should be made to reschedule all criminal trials, subject to a defendant's right to a speedy trial." In re: Idaho Supreme Court Response to COVID-19 Emergency dated March 13, 2020, at paragraph three. Shortly thereafter, on March 23, 2020, the Court entered an amended emergency order--effective March 25-- prohibiting all jury trials through April 30, 2020, and stating the order "shall be deemed good cause to deny a motion to dismiss a criminal case based upon the time requirements" in I.C. § 19-3501. Amended Order dated March 23, 2020, at paragraph three. Subsequently, the Court entered several additional orders extending this provision and prohibiting jury trials. *See, e.g.*, Order dated March 23, 2020, at paragraph four (requiring rescheduling criminal jury trials scheduled on March 26 through April 30, 2020); In re: Extension of Emergency Reduction in Court Services and Limitation of Access to Court Facilities dated April 14, 2020 (prohibiting jury trials before June 1, 2020); and Order dated April 22, 2020 (prohibiting criminal jury trials before August 3, 2020).

Caudill's jury trial was postponed for over two years under the Idaho Supreme Court's COVID-19 orders. Caudill's second defense counsel filed a motion to dismiss alleging a speedy trial violation, which the district court denied. During the pendency of Caudill's case, the Idaho Supreme Court held that a drug detection dog's intrusion into the interior of a vehicle constitutes an unlawful search. *See State v. Howard*, 169 Idaho 379, 496 P.3d 865 (2021); *State v. Randall*, 169 Idaho 358, 496 P.3d 844 (2021). Following these Supreme Court decisions and another change in counsel, Caudill's third defense counsel filed a motion to suppress, which the district court denied as untimely. Caudill then entered a conditional *Alford*[1] plea to the felony possession of a controlled substance charge, and the State agreed to dismiss the other charges. Caudill reserved her right to appeal the district court's decisions on the motion to dismiss and the motion to suppress. Caudill appeals.

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

2

## II.

## STANDARD OF REVIEW

A trial court's decision on whether to consider a late motion to suppress under Idaho Criminal Rule 12 is reviewed for an abuse of discretion. *State v. Alanis*, 109 Idaho 884, 888, 712 P.2d 585, 589 (1985). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Whether there was an infringement of a defendant's right to a speedy trial presents a mixed question of law and fact. *State v. Clark*, 135 Idaho 255, 257, 16 P.3d 931, 933 (2000). We will defer to the trial court's findings of fact if supported by substantial and competent evidence; however, we will exercise free review of the trial court's conclusions of law. *Id.*

## III.

## ANALYSIS

Caudill asserts that the district court abused its discretion when it denied her motion to suppress for being untimely because, she argues, there was excusable neglect for the untimely filing of the motion. Further, Caudill asserts that the district court erred when it denied her motion to dismiss because the delay of her trial violated her constitutional rights to a speedy trial. The State asserts the district court did not err because there was no excusable neglect for the untimely motion to suppress and the district court properly applied and balanced the *Barker*[2] factors in determining that Caudill's speedy trial rights were not violated.

### A.     Motion to Suppress

Idaho Criminal Rule 12(d) requires a motion to suppress to be filed within twenty-eight days after the entry of a not guilty plea or seven days before trial, whichever is earlier. A trial court may shorten or enlarge the time to file a motion and, for good cause shown or for excusable neglect, may relieve a party of the failure to comply with the time requirements of the rule.

---

[2]     *Barker v. Wingo*, 407 U.S. 514 (1972).

I.C.R. 12(d). In order to relieve a party of the failure to comply with the Rule 12(d) deadlines, the court must find good cause or excusable neglect.

This Court has held that if no good cause or excusable neglect is established, it is error for a trial court to entertain an untimely motion to suppress. *State v. Dice*, 126 Idaho 595, 597, 887 P.2d 1102, 1104 (Ct. App. 1994). In *Dice*, the State objected to an untimely motion to suppress. *Id*. The district court denied the State's motion because it believed it should consider the merits of the motion regardless of the untimely filing of the motion. *Id*. On appeal, this Court reasoned:

> Dice's counsel was not required or given the opportunity to offer any good cause for the delay or to show that the lateness was due to excusable neglect. It appears that the district court decided to hear the motion because it felt the motion was meritorious. This, we conclude, was error.

*Id*. We further noted that, "Allowing untimely motions to be heard because they appear meritorious eviscerates the purpose of the rule." *Id*.

Caudill argues that the district court erred by not finding excusable neglect for two reasons: (1) there was a change in controlling law that should have permitted the district court to hear the untimely motion, and (2) the change in counsel should be viewed as excusable neglect. The State argues that neither the change in law nor the change of counsel is sufficient to meet excusable neglect. We agree with the State.

First, Caudill asked the district court to find excusable neglect based on the now controlling law regarding drug K-9 alerts. Caudill requested that the district court allow the untimely motion to be heard based on the likelihood of its success. As this Court determined in *Dice*, the relevant inquiry is not the merits of the motion. Simply because a motion could be meritorious is not a reason for a district court to ignore the filing deadlines or excuse an untimely motion. *See Dice*, 126 Idaho at 597, 887 P.2d at 1104. For this reason, Caudill's first argument fails.

Second, Caudill claims excusable neglect because there were defense counsel changes and her third defense counsel promptly filed the motion to suppress after being appointed. Caudill argues that the first two defense counsel would have reviewed the file and determined that a motion to suppress, prior to the issuance of *Howard* and *Randall*, would not be meritorious. Caudill further argues that her third defense counsel acted promptly after another review of the file and in light of defense counsel's caseload and the recent drug K-9 opinions. Caudill's excusable neglect claim rests almost entirely on the promptness by which her third defense counsel acted. However,

4

as determined by the district court, the question of excusable neglect goes beyond just examining the actions of Caudill's third defense counsel.

The district court found that the time to file the motion was long expired:

> I appreciate, [defense counsel], that you did inherit this, but it seems like the opportunity to file the motion had run well before your involvement in the case.
>
> The original discovery cutoff in this case was set on June 12 of 2020 for July 13th of 2020. On September 1st of 2020, it was pushed out to September 9th of 2020. Everything since then has repeatedly stated that discovery is complete.
>
> In the Court's scheduling order it clearly states that Motions to Suppress must be filed within 14 days after completion of discovery. Even assuming that the *Randall* decision was the last element of discovery, that was almost seven months ago at this point, so we are well past any deadlines established under the scheduling order.
>
> So again, I appreciate the fact that there's been a change of counsel, I believe there was probably a warm handoff, and it was well past the time that had already expired for pursuing a Motion to Suppress under the Court's scheduling orders and under the Idaho Criminal Rules of Procedure.

The court accordingly held that the suppression motion was "not timely" and denied it without reaching the merits.

Fourteen days to file the motion from the completion of discovery would have made the motion due no later than September 23, 2020. The *Howard* and *Randall* decisions were filed on October 21, 2021. Caudill's third defense counsel was assigned the case on April 4, 2022, and filed the motion on May 3, 2022. Caudill provided no evidence on which to find excusable neglect for the time period between the filing deadline and the filing of the *Howard* and *Randall* decisions, a period of nearly eleven months. The only argument from Caudill is that, assuming her second counsel reviewed the file, counsel might have determined that the motion would lack merit under the applicable law prior to *Howard* and *Randall*. Whether Caudill's second counsel did or did not review the file or determined not to file the motion based on existing law is pure speculation. In addition, nothing precluded Caudill's second counsel from filing the same motion and preserving the issue that defense counsel did in *Howard* and *Randall*.[3] Moreover, there is no explanation for second defense counsel's failure to file the motion after *Howard* and *Randall* were filed.

---

[3] We note that Randall was arrested in September 2018. *State v. Randall*, 169 Idaho 358, 361, 496 P.3d 844, 487 (2021). Howard was arrested in March 2019. *State v. Howard*, 169 Idaho 379, 381, 496 P.3d 865, 867 (2021). Caudill was arrested in November 2019, though the proceedings in this case were delayed due to the COVID-19 pandemic. Counsel for Caudill could have filed the same motion to suppress, based on then-existing case law, as did counsel in *Howard* and *Randall*.

5

Approximately eighteen months elapsed from the time the motion was due to the assignment of the case to the third defense counsel. From the appointment of the third counsel approximately five and one-half months had elapsed from the filing of *Howard* and *Randall*. No excuse has been shown for this time delay.

Caudill claims that the district court abused its discretion because it "did not act consistently with the applicable legal standards when it denied the motion to suppress." Caudill has shown no violation of a legal standard by the district court. Considering the district court's exercise of reason in finding no excusable neglect, Caudill has shown no error. The district court did not err in denying Caudill's motion to suppress.

## B. Motion to Dismiss

The Sixth Amendment to the Constitution of the United States guarantees to criminal defendants the right to a speedy trial. *State v. Young*, 136 Idaho 113, 117, 29 P.3d 949, 953 (2001). This right is applicable to the states through the Fourteenth Amendment. *Id.* In addition, Article I, § 13, of the Constitution of the State of Idaho also guarantees the accused in a criminal case the right to a speedy trial. *Id.* To determine whether a defendant's right to a speedy trial was violated under both the United States and Idaho Constitutions, appellate courts employ the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). *State v. Avila*, 143 Idaho 849, 853, 153 P.3d 1195, 1199 (Ct. App. 2006). Under the *Barker* test, the court must weigh four factors to determine whether there has been a violation of the constitutional right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to a speedy trial; and (4) the prejudice occasioned by the delay. *Id.* None of the four *Barker* factors is, by itself, either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. *State v. Brackett*, 160 Idaho 619, 625, 377 P.3d 1082, 1088 (Ct. App. 2016).

### 1. Length of delay

"The first factor, the length of the delay, is a triggering mechanism." *Young*, 136 Idaho at 117, 29 P.3d at 953. This factor serves a dual role in the analysis of the right to a speedy trial; it is a factor, but also serves as the triggering mechanism, "for until there is some delay which is presumptively prejudicial, it is unnecessary to inquire into the other three factors." *Id.* "Under the Sixth Amendment, the period of delay is measured from the date there is 'a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge.'" *Id.* (quoting *United States v. Marion*, 407 U.S. 307, 320 (1971)). "Under the Idaho

6

Constitution, the period of delay is measured from the date formal charges are filed or the defendant is arrested, whichever occurs first." *Id.*

*Barker*'s four-part speedy trial test creates no bright line boundaries. Rather, the United States Supreme Court noted that because of the imprecision of the right to a speedy trial, the length of delay that will provoke an inquiry into whether those rights have been violated is dependent upon the peculiar circumstances of the case. *Barker*, 407 U.S. at 530-31. The nature of the case is also important in determining the period of delay that can be tolerated, for the period that is reasonable for prosecution of an "ordinary street crime" is considerably less than for a complex criminal charge. *Id.* at 531; *State v. Lopez*, 144 Idaho 349, 353, 160 P.3d 1284, 1288 (Ct. App. 2007). This Court has held that delays of one year in a lewd conduct case, *State v. Folk*, 151 Idaho 327, 331, 256 P.3d 735, 739 (2011), and thirteen months in a complex drug trafficking case were sufficient to trigger analysis. *State v. Rodriquez-Perez*, 129 Idaho 29, 34, 921 P.2d 206, 211 (Ct. App. 1996).

The district court used different dates to analyze the delay: Caudill's arrest on November 27, 2019; the complaint filed on November 29, 2019; and the information filed on January 8, 2020. Caudill's motion to dismiss was filed February 2, 2022, and decided on March 28, 2022. At the time the motion to dismiss was filed, the jury trial was set for April 18, 2022. In any event, the delay exceeded two years. The Idaho Supreme Court has held a delay of seven and one-half months was sufficient to trigger analysis. *State v. Talmage*, 104 Idaho 249, 252, 658 P.2d 920, 923 (1983). Accordingly, as agreed by the parties, the delay at issue is sufficient to trigger a full examination of the other *Barker* factors.

### 2. Reason for delay

"The second factor is the reason for the delay." *Young*, 136 Idaho at 117, 29 P.3d at 953. The United States Supreme Court has explained, "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id.* In contrast, "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* However, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* Pretrial delay is often inevitable and wholly justified. *State v. Davis*, 141 Idaho 828, 835, 118 P.3d 160, 167 (Ct. App. 2005).

7

Caudill asserts that the cause of the delay should weigh heavily against the State because of the COVID-19 orders that came from the Idaho Supreme Court ordering delays in jury trials.[4] The district court determined, "[t]he reason for the delay weighs heavily in favor of finding there was not a violation of Defendant's right to a speedy trial." The district court recognized that Caudill's "trial has been reset seven times because the Orders prevented commencement of jury trials." The district court determined, "[i]n all of the Orders, the Idaho Supreme Court included a provision that the delay caused by implementing the Orders was to be considered 'good cause' for purposes of tolling speedy trial pursuant to I.C. § 19-3501." The district court further noted "[d]espite this, the Idaho Supreme Court continuously modified the situation to craft a solution that considered both the needs and rights of criminal defendants and the broader public's health and safety issues."

Caudill contends that application of the "good cause" standard used by the Supreme Court in its emergency orders would be contrary to *Barker* which requires courts to apply its balancing test on an ad hoc basis after analyzing the four *Barker* factors. We need not address this issue, as the district court analyzed the motion under the four *Barker* factors. Nonetheless, the Idaho Supreme Court's pronouncement gives great weight to a finding that the reason for delay is neutral in the *Barker* analysis and against finding a constitutional violation.

The Idaho Supreme Court's emergency orders are not actions taken by either the trial court or the prosecution. The trial court was working within the bounds set to protect society from the spread of COVID-19, and the prosecution was not delaying Caudill's trial to hamper the defense. We agree with those courts that have found that delay due to the pandemic is justifiable and such

---

[4] Many courts have held that similar orders, dealing with the pandemic and public health, are not weighed against the State in a speedy trial analysis. *See, e.g., United States v. Jones*, ___ F.3d ___, ____ (6th Cir. Feb. 9, 2023) (finding COVID-19 "orders were temporary and reasonably calculated to abate the spread of a global pandemic and, in turn, save lives," and were therefore "rightly excluded" from the defendant's statutory "speedy trial clock"); *United States v. Olsen*, 21 F.4th 1036, 1047 (9th Cir. 2022) (observing that "surely a global pandemic that has claimed more than half a million lives in this country, and nearly 60,000 in California alone, falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health"); *Ali v. Commonwealth*, 872 S.E.2d 662, 676 (Va. App. 2022) ("The ongoing nature of the global pandemic supported the continuation of restrictions until such time as circumstances permitted the resumption of jury trials in a manner that protected both the health and safety of all participants and the constitutional rights of criminal defendants."); *Brown v. Commonwealth*, 877 S.E.2d 156, 166 (Va. App. 2022) (holding "[a] pandemic-related delay is "valid, unavoidable, and outside the Commonwealth's control").

8

delay is not weighed against the State. *See, e.g.*, *Labbee v. State*, 869 S.E.2d 520, 566 (Ga. Ct. App. 2022) (noting neither party was responsible for pandemic related delays and affirming trial court finding that the delay attributable to the pandemic "should not be weighed negatively against the State"); *State v. Paige*, 977 N.W.2d 829, 838-40 (Minn. 2022) (holding "trial delays due to the statewide orders issued in response to the COVID[-]19 global pandemic" did not weigh against the State because "the orders were responding to a deadly and virulent illness over which the court had no control" and the administration of justice "required the courts to ensure the health and safety of its employees and clients"); *State v. Brown*, 964 N.W.2d. 682, 693 (Neb. 2021) (holding pandemic related delays were a valid reason under a constitutional speedy trial analysis); *State v. Tuinman*, 535 P.3d 362, 380 (Utah Ct. App. 2023) (observing that "delays associated with a once-in-a-century worldwide pandemic should not in fairness be held against the State in a Sixth Amendment speedy trial analysis" and concluding that such delays "should be considered justified, or at least considered 'neutral' and weighed against neither side"); *Ali v. Commonwealth*, 872 S.E.2d 662, 676 (Va. Ct. App. 2022) (The "ongoing nature of the global pandemic supported the continuation of restrictions until such time as circumstances permitted the resumption of jury trials in a manner that protected both the health and safety of all participates and the constitutional rights of criminal defendants"). The reason for the delay is neutral and weighs in favor of finding there was no violation of Caudill's right to a speedy trial.

### 3. Assertion of right to a speedy trial

"The third factor is the accused's assertion of his right to a speedy trial." *Young*, 136 Idaho at 117, 29 P.3d at 953. The *Barker* Court observed, "The more serious the deprivation, the more likely a defendant is to complain." *Barker*, 407 U.S. at 531. "The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id*. at 531-32. The *Barker* Court further emphasized "that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id*. at 532.

There were multiple times during the two years of the proceedings where Caudill asserted her right to a speedy trial. The district court found five instances of Caudill orally asserting her right and an assertion in the form of the motion to dismiss filed on February 2, 2022. The district court also noted that Caudill "was also aware of the impediments of conducting a trial due to COVID-19." Caudill asserted her right to a speedy trial, which weighs in favor of Caudill.

9

#### 4.	Prejudice to defendant

"The fourth factor is prejudice to the accused caused by the delay." *Young*, 136 Idaho at 118, 29 P.3d at 954. The Idaho Supreme Court has recognized "that prejudice is a central factor in analyzing the right to speedy trial." *State v. Holtslander*, 102 Idaho 306, 313, 629 P.2d 702, 709 (1981). "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. The *Barker* Court "identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id*. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. The *Barker* Court explained: "If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past." *Id*. "Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." *Id*.

As to the first factor, oppressive pretrial incarceration, Caudill remained out of custody during the pendency of the trial. As to the second factor, minimizing anxiety and concern of the accused, Caudill asserts she suffered anxiety awaiting her trial. She further asserts this impeded her ability to relocate, which impacted her ability to enjoy her daily life. The district court addressed this concern and found "[w]hile the Court is cognizant of anxiety caused by a pending criminal prosecution, there is no Pre-Trial Release Order preventing Defendant from moving out of state or finding another job." And the anxiety that Caudill suffered, while undoubtedly real, is not sufficient to find that Caudill was prejudiced by the COVID-19 orders extending her trial date. Defendant's anxiety over trial alone is generally insufficient to support a claim of a speedy trial violation. *State v. Risdon*, 154 Idaho 244, 252, 296 P.3d 1091, 1099 (Ct. App. 2012).

Regarding impairment to the defense, the district court found that this factor was neutral. Caudill argues a witness died during the delay which prejudiced her defense. This witness, Dave Crow, was the purported owner of the vehicle. Caudill asserts that Crow owned the vehicle she had been driving. Caudill noticed a pipe rolling around the vehicle while she was driving, and she put the pipe in her purse when the police stopped her. She asserts that since the vehicle was Crow's "the anticipated testimony would be that that was his pipe." However, Caudill was the only individual in the car at the time of the arrest, and to prove Caudill constructively possessed the

drugs and paraphernalia, the State only needed to show her "knowledge and control of the controlled substance." *State v. Southwick*, 158 Idaho 173, 178, 345 P.3d 232, 237 (Ct. App. 2014). The district court properly rejected this argument after finding that Caudill "has not indicated how Mr. Crow's testimony is vital to prepare her case. Without more, this factor is neutral in a finding of a speedy trial violation." The district court did not err in finding the *Barker* prejudice to the defense factor is neutral and weighs in favor of finding there was no violation of Caudill's right to a speedy trial.

### 5. Balancing

The four *Barker* factors must be weighed to determine whether there has been a violation of Caudill's constitutional rights to a speedy trial. *Rodriquez-Perez*, 129 Idaho at 37, 921 P.2d at 214. None of the four *Barker* factors are "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial," and they are instead "related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533.

As the district court properly concluded, the sum of the factors weigh against finding a speedy trial violation. The time between Caudill's arrest and the denial of her motion exceeded two years. The reason for the delay, the unavoidable COVID-19 pandemic, and the ensuing trial restrictions imposed to protect the health and safety of all those involved in court proceedings is not attributable to the State; it is a neutral factor in the balancing analysis. While Caudill may have dealt with anxiety and concern while facing charges, she was not imprisoned and these facts do not weigh in favor of finding a violation of her speedy trial rights. Caudill timely asserted her speedy trial rights which weighs in her favor. More importantly, Caudill failed to demonstrate that her ability to present a defense was prejudiced by the delay. Thus, considering the four *Barker* factors, Caudill failed to show her speedy trial rights were violated. Accordingly, the district court did not err in denying Caudill's motion to dismiss.

## IV.

## CONCLUSION

Caudill failed to establish the district court erred in denying her motion to suppress as untimely. Caudill also failed to establish her speedy trial rights were violated by the delays in the proceedings. The district court did not err in denying Caudill's motion to suppress or her motion to dismiss and the judgment of conviction is affirmed.

Judge HUSKEY and Judge LORELLO **CONCUR**.

11